THAW *v.* DETROIT TRUST CO.

1. TRUSTS—ACCOUNTING—JURISDICTION.
   Circuit court of county in which testamentary trust had its
   inception and in which probate court had controlled admin-
   istration of the trust had jurisdiction of suit by nonresident
   beneficiaries against trustee with business situs in another
   county for accounting by, and removal of, the trustee (Act
   No. 288, chap. 1, § 19, Pub. Acts 1939).

2. SAME—JURISDICTION.
   Concurrent jurisdiction of matters pertaining to the administra-
   tion of a trust is normally in the circuit court in chancery of

Trustee's duty to diversify investments, see 1 Restatement, Trusts,
§ 228.
Effect of a decree of the court to bar a beneficiary from holding
the trustee liable, see 1 Restatement, Trusts, § 220.

the same county wherein the probate court in which the trust originated is located (Act No. 288, chap. 1, § 19, subd. 5, Pub. Acts 1939).

3. SAME—ACCOUNTING—SUIT IN REM.
   A suit for an accounting against a testamentary trustee is a suit *in rem* and is properly brought where the trust estate is legally situated.

4. SAME—PERSONALTY—SITUS.
   An express trust of personalty has its situs at the domicile of the creator at the time of its creation, and the courts of the situs of the trust have jurisdiction over the trustees' accounts.

5. SAME—ACCOUNTING—JURISDICTION—VENUE.
   Suit for accounting as to testamentary trust which had its origin in county wherein suit was brought and in which real estate belonging to the trust was located was properly brought in such county although no relief was sought as to such real estate, plaintiffs were nonresidents of the State, and defendant corporate trustee's business situs was in another county (Act No. 288, chap. 1, § 19, Pub. Acts 1939).

6. SAME—MALADMINISTRATION—APPROVAL OF ACCOUNT BY PROBATE COURT—RES JUDICATA.
   In suit by beneficiaries of testamentary trust for accounting by trustee, commenced after defendant had made nine accountings, because of maladministration during the first year of the trust arising from failure to make timely sale of certain stocks and bonds and insufficient diversification of investments, where such aspects were made to appear to the probate court at hearing on first account, the allowance thereof adjudicated such matter as to all adult beneficiaries and as to minor beneficiaries as soon as guardians *ad litem* appeared for them at hearings on accounts, all of whom had been duly notified (3 Comp. Laws 1929, § 15900).

7. SAME—MALADMINISTRATION—FAILURE TO DIVERSIFY INVESTMENTS—RES JUDICATA.
   Claim of· maladministration of testamentary trust because of trustee's purchase of additional shares of stock of a corporation in which estate already had a substantial portion of its funds invested, having been apparent at time of filing first and subsequent duly-approved accounts at hearing of which beneficiaries had timely notice but at which they neither appeared nor made objections, related to a matter previously adjudicated.

8. FRAUD—EVIDENCE.

   The facts in each case must be considered in determining whether fraud exists.

9. TRUSTS—FRAUD—RES JUDICATA.

   Beneficiaries were not entitled to relief because of testamentary trustee's alleged misrepresentation or fraudulent concealment incident to presenting and obtaining allowance of its first or any of its eight subsequent annual accounts, advanced in suit for accounting, commenced after trustee had filed a tenth account, where plaintiffs who had not appeared at the hearings on accounts could and should have presented, if at all, the matters complained of at hearing on appropriate current account of defendant.

10. SAME—RES JUDICATA—TRUSTEE'S FEES—ALLOWANCE OF ACCOUNT—SUBSEQUENT SUIT FOR ACCOUNTING.

    Allowance by probate court of testamentary trustee's first and eight subsequent annual accounts after due notice to beneficiaries of hearing thereon rendered items relative to trustee's fees adjudicated and unassailable by beneficiaries in subsequent suit in equity for accounting (3 Comp. Laws 1929, § 15896).

11. SAME—TRUSTEE'S EXTRA FEES—RES JUDICATA—INCOME BENEFICIARIES.

    Items of trustee's accounts, relating to its fees in addition to those permitted by statute, which had been allowed after presentation to probate court, were *res judicata* as to income beneficiaries, both of whom were adults (3 Comp. Laws 1929, § 15896).

12. SAME — FEES — CORPUS BENEFICIARIES — INFANTS — RECORD — GUARDIAN AD LITEM.

    Minor beneficiaries in suit against trustee for an accounting were not entitled to relief as to fees allowed trustee in addition to statutory fees where such amount charged against corpus in which they had an interest was comparatively small, record fails to establish charges were improper or unjust, and last of the accounts at which they had not been represented by either a guardian or guardian *ad litem* was allowed upwards of six years prior to commencement of suit (3 Comp. Laws 1929, § 15896).

13. INFANTS—LACHES—DELAY—DISCRETION OF COURT.

    While an infant may not be guilty of laches, yet inexcusable delay has a bearing upon judicial discretion.

14. JUDGMENT—INFANTS—GUARDIAN AD LITEM.

The law does not require that a guardian *ad litem* shall be appointed for a minor whose interests are affected by the order of the probate court disposing of an estate, but assumes that such interests will be protected by the court, and therefore the judgment of said court is binding on an infant, although no guardian *ad litem* was appointed.

15. COSTS—TRIAL—APPEAL—TRUSTS—ACCOUNTING.

In suit by beneficiaries under testamentary trust against trustee for accounting where some relief was allowed in circuit court, costs in that court are allowed plaintiffs but upon partial, but substantial, vacation of provisions of trial court's decree surcharging trustee, costs on appeal are allowed defendant.

Appeal from St. Clair; George (Fred W.), J. Submitted June 15, 1943. (Docket No. 94, Calendar No. 42,419.) Decided October 11, 1943. Rehearing denied January 13, 1944.

Bill by Mary Thomson Thaw and others against Detroit Trust Company, a Michigan corporation, for removal of trustee and for an accounting as to losses caused by maladministration of a trust estate. Decree for plaintiffs on portion of claim. Defendant appeals. Plaintiffs cross-appeal. Reversed in part, affirmed in part.

*Sempliner, Dewey, Stanton & Honigman, Walsh, Walsh & O'Sullivan* and *McLanahan, Merritt, Ingraham & Christy* (*Fred G. Dewey* and *Francis T. Christy,* of counsel), for plaintiff.

*Butzel, Eaman, Long, Gust & Bills* and *Watson & Inman* (*Thos. G. Long* and *Frank D. Eaman,* of counsel), for defendant.

NORTH, J. Asserting right to relief on the ground of maladministration of a testamentary trust estate, plaintiffs herein seek an accounting by, and removal of, the trustee. On hearing in the

circuit court in chancery in St. Clair county the relief sought was granted in part and denied in part. Both the plaintiffs and the defendant have appealed.

The trust involved in this litigation was created by the will of John W. Thomson,who died'November 1, 1928. His will was probated in the probate court of St. Clair county. He had named the defendant herein as executor of his will and also as the trustee of the testamentary trust. Defendant administered the estate and upon the allowance of its final account as executor the residue of the estate was assigned to the defendant, Detroit Trust Company, as trustee; and, having qualified as such, defendant has continued to administer the trust estate since September 10, 1929. Plaintiffs herein include all of the beneficiaries under the trust. Their respective interests in the trust estate are as follows: Mary Thomson Thaw and Julien Thomson are equal life beneficiaries of the income; Gladys Thomson is named only as one having a contingent life interest as the survivor of her husband, Julien Thomson, and until her remarriage; and as to the remaining plaintiffs it is sufficiently accurate to state that they take the corpus of the trust estate upon the termination of the life interests. Plaintiffs are all nonresidents of the State of Michigan; and the business situs of the defendant corporation is in Detroit, Wayne county, Michigan.

Because of the residential status of the respective parties, defendant by proper procedure sought to have the bill of complaint dismissed in the trial court. Dismissal was denied and this ruling is asserted by defendant to have been erroneous. In substance defendant's contention is that since its principal place of business is in Wayne county,

Michigan, and all of plaintiffs are nonresidents of Michigan, the circuit court in chancery of Wayne county has exclusive jurisdiction. See 3 Comp. Laws 1929, § 13997, subd. 12 (Stat. Ann. § 27.641, subd. 12). We think the trial court was correct in ruling adversely to this contention. Neither party has cited, nor have we found, a decision in this State which is directly in point. While not conclusive, it is quite persuasive to note that if the issues sought to be adjudicated in this suit in chancery had been presented for adjudication to the probate court of St. Clair county, as they might have been, there could be no question about the jurisdiction of that court. Act No. 253, Pub. Acts 1899; 3 Comp. Laws 1929, § 15880; Act No. 288, chap. 1, § 19, Pub. Acts 1939 (probate code) (Comp. Laws Supp. 1940, § 16289–1 [19], Stat. Ann. 1940 Cum. Supp. § 27.3178 [19]). And further, if there had been an appeal from a determination by the probate court of St. Clair county, such appeal would have been to the circuit court of that county. It was in St. Clair county that the trust had its inception and for years the probate court of that county has controlled administration of the trust. Defendant in accepting the trusteeship undertook the execution of the trust in St. Clair county. Concurrent jurisdiction of matters pertaining to the administration of a trust is normally in the circuit court in chancery of the same county wherein the probate court in which the trust originated is located. The foregoing would seem to be in accord with the intent of the statutory provision for concurrent jurisdiction in the circuit court in chancery. In part the statute reads: "Provided, That the jurisdiction conferred by this section (on probate courts) shall not be construed to deprive the circuit court in chancery *in the proper county* of concurrent juris-

diction as originally exercised over the same matter." Act No. 288, chap. 1, § 19, subd. 5, Pub. Acts 1939. In a Federal case involving Michigan law it was held in substance that a suit for an accounting against a testamentary trustee is a suit *in rem* and is properly brought where the trust estate is legally situated. See *Michigan Trust Co.* v. *Ferry*, 99 C. C. A. 221 (175 Fed. 667).

."An express trust of personalty has its situs at the domicile of the creator at the time of its creation, and the courts of the situs of the trust have jurisdiction over the trustees' accounts." 65 C. J. p. 895.

It may also be noted that in the instant case there is real estate located in St. Clair county which constitutes a portion of the trust estate, although no relief relative to such real estate is sought in this suit. Under the circumstances here present it cannot be held that the circuit court in chancery of St. Clair county did not have jurisdiction of the subject matter of this suit; and no question is raised or could be raised as to the validity of the service of the process of that court on defendant herein.

The issue of *res judicata* is also presented by defendant-trustee. In 1931 the trustee filed its first interim account covering its administration of the trust from September 10, 1929, to September 10, 1931. Thereafter the trustee filed in the probate court of St. Clair county eight consecutive annual accounts covering each fiscal year to September 10th. On the filing of each account an order for hearing was entered by the probate court and duly published. Hearing was had on each account pursuant to such order and after hearing an order was entered by the probate court allowing each of

the respective accounts of the trustee. The last of the trustee's annual accounts that was allowed in the probate court covered the period from September 10, 1938, to September 10, 1939. The tenth account of the trustee, filed October 14, 1940, is still pending. Thereafter the instant suit was started July 9, 1941, and plaintiffs seek, as stated in their brief, "to hold defendant, as trustee, accountable for breaches of trust as to certain items committed during the *first* year of the trust" and to recover alleged excessive fees allowed the trustee. In this particular it is also stated in plaintiffs' brief that: "As to the assets originally held by defendant, as trustee, plaintiffs' complaint relates to the complete loss or great shrinkage in value of the Federal bonds and the Detroit Edison and United States Steel stocks." The trial court granted the relief sought as to the Federal bonds, but denied relief as to the Detroit Edison stock and the United States Steel stock. Defendant has appealed from the former holding, and plaintiffs from the latter.

The powers of the trustee are set forth in the will of John W. Thomson as follows:

"To sell and convey the property of which I may die seized or possessed and invest the proceeds and keep them invested and reinvested in such securities as the said trustee may deem best, with the right on its part to purchase from itself, if it deems proper, good securities at prevailing market prices."

It is alleged in the bill of complaint that notwithstanding the inventory filed in the estate of Thomson, deceased, disclosed properties of a so-called ledger value (carrying value) of about $300,000 (though the trustee's inventory of *personal property* as of September 10, 1929, discloses

its ledger or carrying value as $186,356.47), that under the management of the defendant trustee this estate depreciated and was dissipated until at the time of instituting this suit it had shrunk to a value less than $100,000; and that this shrinkage of the estate was due to gross mismanagement, gross neglect and breaches of fiduciary duty on the part of defendant. More specifically, the mismanagement and neglect of duty alleged on the part of defendant was its failure to sell within a reasonable time after it received them certain securities which came into its possession as trustee; and its failure to reinvest the proceeds of such sales in proper and diversified securities.

As bearing upon whether the defense of *res judicata* can be asserted as to certain of the plaintiff-beneficiaries, it should be noted that prior to May 25, 1940, two of these beneficiaries (Mary Augusta Thomson and John Webster Thomson) were minors and one was still a minor when this suit in chancery was commenced. These minors were not under general guardianship, nor was a guardian *ad litem* appointed for either of these minors incident to the hearings of the first four of the trustee's interim or annual accounts; but thereafter incident to each annual accounting a guardian *ad litem* was appointed for the minor beneficiaries.

However, under the circumstances of the instant case, the adult beneficiaries cannot take advantage of the failure to appoint guardians *ad litem* for the minor beneficiaries. And the question arises as to whether the 5th to the 9th annual accounts inclusive, incident to which guardians *ad litem* for the minor beneficiaries were appointed, do not bind such minor beneficiaries as to the alleged maladministration of the estate, unless circumstances are shown in the nature of fraud which afford

reason for reopening for adjudication in this equity suit the matters involved in the interim or annual accountings. Whether it is shown in this record that the trustee was guilty of such fraudulent conduct incident to its accountings as to void the finality of the allowance of such accounts and to justify reconsideration of them in the instant case, will be hereinafter considered.

As above noted, the specific maladministration charged against the trustee is its failure "during the first year of the trust" to sell certain stocks and bonds taken over by the trustee from the executor of the Thomson estate, and which failure to sell resulted in loss to the estate because of shrinkage in value of these securities. As above noted, the investments to which the complaint relates are: (1) Detroit Edison stock, (2) United States Steel stock, and (3) so-called Federal bonds. There is also involved plaintiffs' claim that the investments were not sufficiently diversified. If these aspects of the estate were reasonably made to appear to the probate court at the hearing of the trustee's first account or any of its later annual accounts, then allowance of such account or accounts, as to the adult beneficiaries, adjudicated these matters and they cannot be readjudicated in the instant chancery suit. And as to the two minor beneficiaries, if these aspects of the estate appeared in the 5th or subsequent annual accounts of the trustee, then the minor beneficiaries likewise are bound by the adjudication of the probate court in allowing such annual accounts, regardless of whether such minors should be held bound by the trustee's earlier accounts incident to which the minors were not represented by either a general guardian or a guardian *ad litem.*

Review of the record in this Court satisfies us that the condition of the estate's investments and the conduct of the trustee relative to such investments appeared in its first account which was heard by the probate court and allowed in February, 1932.

There was no appraisal of the items of property taken over from the executor of the Thomson estate at the inception of the trust estate. But the inventory of the items of property was carried over into the account of the trustee from the preceding executor's account. In this inventory there was set opposite each of the items of property involved in the instant suit a so-called "ledger value" or carrying value. The first account of the trustee, printed in abbreviated form, covers 15 pages of the record. It discloses the condition of the trust estate as of September 10, 1931. It plainly sets forth the information about to be noted relative to each of the three items as to which plaintiff herein. alleges the trustee mismanaged the estate "during the first year of the trust."

1. *Detroit Edison stock.* Under the heading "Income account—dividends" the following entry appears: "From Detroit Edison Company 4% on 260 shares common stock total par value $26,000— $1,040." Under the heading "Disbursements" the following: "Investment service charge for $5,200 invested in purchase of 52 shares common stock of the Detroit Edison Company—$52." Under the heading "Statement of property— September 10, 1931" there is entered among stocks listed the item: "$31,200—Detroit Edison Company, common—312 shares, ledger value $53,720." And under the heading of property purchased by the trustee and "Principal paid" therefor the following: "52 shares common stock of Detroit Edison Company at $100 per share—$5,200."

2. *United States Steel stock.* Under the heading "Income. account—dividends" the following entry appears: "From United States Steel Corporation: $15 per share on 80 shares common stock. Total par value $8,000—$1,200." Under the heading of "Statement of property—September 10, 1931" appears the following entry: "Stocks —$8,000 United States Steel Corporation, common —80 shares, ledger value $12,668."

3. *Federal bonds.* These investments were all taken over by the trustee from the executor of the estate of John W. Thomson, deceased, upon the closing of his estate. They consisted of bonds from 13 different issues listed in the decree of the trial court. Each issue was secured by a trust mortgage on real estate, and in each instance the Federal Bond & Mortgage Company, Incorporated, was named as trustee. It was not the obligor on any of these bonds. Accepting figures contained in a schedule printed in the record, the "principal amount" of these bonds (including $10,000 Harrington Hotel bonds) was $65,000. The amount received by the trustee from the sale or liquidation of these bonds was $16,344.26, and the approximate value of those still held by the trustee as of April 1, 1941, was $1,080. The trustee's coming into possession of these securities quite closely coincided with the period of depression which in 1929 and thereafter brought general destruction to securities of this character. Except to the extent above indicated, these securities with the crash of the. market were soon "gone with the wind." As alleged in plaintiffs' bill of complaint, and as "hindsight" now renders it plain to all concerned, if the trustee had promptly disposed of all or more of these securities the loss sustained would have been much less. Here again the issue presented is

as to whether the beneficiaries, notwithstanding the report in the first and subsequent annual accounts by the trustee of its continued possession of these securities, may still hold the trustee liable in this suit. The decree in the circuit court surcharged the trustee with the losses on these Federal bonds.

In the trustee's first account relative to the so-called Federal bonds, consisting of securities held in the above-noted separate bond issues, under the heading "Statement of property—September 10, 1931—bonds" there appears the following: "Par value, $6,000 Porter street branch, post office building, first mortgage—6½%, ledger value $5,700." And as to the securities held in each of the other 12 bond issues listed in the trial court's decree and designated as Federal bonds there appears a like item in the trustee's first report. In addition to the above there appears in this first report as to one of these Federal bond investments under the heading of "Income account. Interest for two years on the following. To April 15, 1931" this entry: "From Walnut Lane Apartments: 6½% on $1,000 bonds $130." And in this income account there further appears as to six others of these so-called Federal bonds a report of like purport as to income received prior to the trustee's first report. It thus appears that the first report of the trustee plainly disclosed to the probate court and at least to the adult beneficiaries that the trustee at the close of the second year of administering the trust was still holding the investments it had received from the executor in the so-called Federal bonds. Information concerning these Federal bonds, such as their possession, sale, liquidation, exchange, et cetera, was contained in each of the trustee's accounts.

Since the beneficiaries were nonresidents, notice of the hearing of the trustee's first account was by publication. Plaintiffs admit the validity of such service. Plaintiffs Mary Thomson Thaw and Julien Thomson were the sole beneficiaries during their respective lives of the income from the trust estate. In addition to publishing notice of the hearing of its first account, the trustee mailed copies of that account to each of these two life beneficiaries. The account discloses that prior to its filing the trustee had remitted $7,345.11 to each of these two beneficiaries. None of the beneficiaries appeared at the hearing of this first account, nor did any of them appear at the hearing of any of the subsequent annual accounts of the trustee which covered the next ensuing eight years. Upon hearing, the probate court allowed this first account of the trustee which covered its administration of the trust to September 10, 1931. As hereinbefore noted, the complaint of these plaintiffs of the maladministration of the trust pertains only to such alleged maladministration during the *first* year of the trusteeship; and their complaint on this appeal (aside from asserted retention of excessive fees) pertains only to the trustee's alleged mismanagement of the three items above considered and designated as the estate's investments in the Detroit Edison Company, the United States Steel Corporation, and the so-called Federal bonds. Subject to consideration hereinafter given of plaintiffs' claim of fraud incident to submitting the trustee's first account, our review of this record forces the conclusion that at least the adult beneficiaries are bound as a matter of *res judicata* by the first account of the trustee insofar as it pertains to the estate's investments just above noted. *Heap v.*

*Heap*, 258 Mich. 250, 259; *Roberts* v. *Michigan Trust Co.*, 273 Mich. 91, 108.

The pertinent statutory provision read:

"The decree of the court having jurisdiction allowing any account of a trustee shall, except in cases of fraudulent concealment or fraudulent misrepresentation on the part of the trustee, be final and conclusive against all persons interested in such account and legally competent at the date of such decree, and against all other persons who are or may become interested therein, although unborn, unascertained or legally incompetent to act in their own behalf, if their general guardian or guardian *ad litem* has, after having been duly appointed, assented to such account, or has been heard thereon, or been notified of the hearing thereon." 3 Comp. Laws 1929, § 15900 (Stat. Ann. § 27.3079). (Repealed by Act No. 288, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–4 [39] Stat. Ann. 1942 Cum. Supp. § 27.3178 [290]), but re-enacted in substance, see Act No. 288, chap. 4, § 39, Pub. Acts 1939.)

But it is urged that since at the time this first account and the three next subsequent annual accounts were allowed, two of the beneficiaries were minors who were not represented by either a general guardian or a guardian *ad litem,* they are not bound by the adjudication. Plaintiffs' contention in this particular will be hereinafter considered; but see *Thompson* v. *Thompson*, 229 Mich. 526; *Curtis* v. *Curtis,* 250 Mich. 105; *Cohen* v. *Home Life Ins. Co.,* 273 Mich. 469; and *Home Life Ins. Co.* v. *Cohen,* 278 Mich. 169. However, incident to the trustee's fifth account and each of the four succeeding annual accounts a guardian *ad litem* was appointed for the minor beneficiaries. Proper notice of hearing of

each of these accounts was given, and each was duly allowed by the probate court. Unless the trustee in making these later accounts is found guilty of fraudulent conduct, the minor beneficiaries (as well as the adults) are bound by their allowance. A case of this character is reported in *Greene* v. *Springfield Safe Deposit & Trust Co.*, 295 Mass. 148 (3 N. E. [2d] 254). See, also, *Riebel's Estate*, 321 Pa. 145 (184 Atl. 118); and *In re Roche's Will*, 259 N. Y. 458 (182 N. E. 82).

In the fifth account of the trustee under the heading of "Inventory as of September 10, 1935" the following is shown: "Stocks, $31,200 par value Detroit Edison Company common 312 shares, ledger value $53,720;" and also the following: "$8,000 par value United States Steel Corporation common 80 shares, ledger value $12,668." Further this fifth account plainly disclosed that the trustee carried among the estate's assets all of the investments in the Federal bonds listed in its inventory and first annual account and which it had taken over from the executor, with the exception of three items. As to these three items this fifth account of the trustee disclosed that within the current year it had made the following disposition of them. It had sold for $320, this being 32 cents on the dollar, 10 shares of common stock of the Second Walnut Lane Apartments, Inc. Within the current year this item, as the report disclosed, had been received in exchange for the Walnut Lane Apartment first mortgage bonds theretofore held by the receiver. Another of these three items, $9,000 par value Griswold building first mortgage bonds, being deemed worthless, was charged off in the account of the estate's assets. The remaining item, $10,000 King Properties first mortgage bonds, was shown as having been liquidated at 50 cents on

the dollar. In the trustee's four annual accounts subsequently submitted and allowed there are numerous entries pertaining to these Federal bond investments. The fifth to the ninth annual reports, inclusive, beyond any question amply informed the probate court or any party interested that the trustee had made a stated disposition of or was continuing to hold the items of investments about which plaintiffs now complain, and that the trustee had not by sale of the Detroit Edison stock or the United States Steel stock and reinvestment of the proceeds sought a more diversified investment in behalf of the trust estate. Notices of hearings of the fifth and subsequent annual accounts were regular, none of the beneficiaries appeared, no objections to the allowances of the respective accounts were made, and each of these accounts was duly allowed. Unless they can be avoided on the ground that the trustee was guilty of fraudulent conduct, the adjudications allowing the trustee's fifth and subsequent accounts are binding upon the minor beneficiaries, as well as upon the adult beneficiaries, and are *res judicata* of plaintiffs' claim that in the respects hereinbefore noted the trustee was guilty of maladministration of this trust. We are not in accord with the contention in plaintiffs' brief that

"The orders allowing the accounts subsequent to the first account were merely allowances of annual accounts and, if they are *res judicata,* they are only conclusive as to the transactions during the period covered by such annual accounts, and are not *res judicata* as to claims arising during the period of the first account."

See *Greene* v. *Springfield Safe Deposit & Trust Co., supra.*

In this connection we note plaintiffs' claim of wrongful conduct on the part of the trustee in ex-

ercising the right of the estate as a stockholder to subscribe for 52 additional shares of the common stock of the Detroit Edison Company. The particular claim made is that the purchase price was too high, that already too large a portion of the estate's funds were invested in this stock, and that purchase of the additional 52 shares aggravated this condition of lack of diversification. Mere reference to the trustee's first inventory and account and a comparison with the inventory in the fifth or subsequent annual accountings immediately discloses the fact of this investment. If plaintiffs' complaint was of any consequence it, like the other complaints hereinbefore considered, could have been and should have been raised by the beneficiaries incident to the hearing of one of the annual accounts. Not having been so raised, it cannot be litigated in the instant suit. The judicial allowance of the trustee's fifth account was in effect a granting of .the prayer of its petition which in part reads: "That in the allowance of said account * * * the exchange of property, the continued holding of the investments and other assets of said estate, and all transactions of the trustee as shown in this account and specifically or by necessary reference included in it, be validated and approved." These questions having once been adjudicated, with full opportunity to all interested parties to be heard, cannot now be readjudicated. While it was not required to constitute due service of notice of the hearing of this account, it may be noted that the trustee in advance of the hearing of this fifth account mailed a true copy of the same and of the petition the trustee had filed in a duly posted letter to each of the two beneficiaries who were the sole recipients of the current income of the estate, and by this letter they were advised of the time and place the account would be

heard. And it may be further noted that all of the other beneficiaries were members of the immediate families of the parties so notified by mail.

Touching the matter of plaintiffs' claim that because of fraudulent concealment or misrepresentation on the part of trustee the allowance of its first and subsequent annual reports cannot be held to constitute *res judicata,* the following reasons are urged in their brief:

"First, there was fraudulent concealment or misrepresentation on the part of defendant, as trustee; second, the issues in this case were not before the probate court and were not decided by the probate court; and third, no general guardian or guardian *ad litem* represented the infant beneficiaries."

The second and third reasons above noted have already been sufficiently considered herein, and our holding is adverse to plaintiffs. There remains to be considered what, if anything, is contained in the record before us which bears upon plaintiffs' assertion that there was fraudulent concealment or misrepresentation by the trustee incident to the hearing and allowance of its various accounts.

Plaintiffs' brief contains discussion of this phase of the appeal under some nine subheadings. Consideration given to these various contentions and to the whole record brings the conclusion that defendant was not guilty of misrepresentation or fraudulent concealment. The circuit judge did not specifically state in the finding he filed or in the decree he entered that defendant was guilty of such misconduct. Instead the reason or theory adopted by the circuit judge in granting plaintiffs relief, and which we think was in violation of the rule of *res judicata,* appears in his findings as follows:

"It is the judgment of the court that, so far as the matters hereinafter stated (the items of relief granted) are concerned, the orders of the probate court do not prevent this court from righting a wrong done to the plaintiffs under the facts and circumstances shown by this record. The court is of the opinion that it has the right, and it is its duty, to determine whether the defendant *has been negligent in the handling of this trust estate* and is not prevented by the orders made by the probate court in the circumstances under which they were made."

As we have said in former decisions: "The facts in each case must be considered in determining whether fraud exists." *Roberts* v. *Michigan Trust Co., supra,* p. 115. Under the record in the instant case we hold plaintiffs are not entitled to relief on the ground that the defendant trustee was guilty of misrepresentation or fraudulent concealment (either in fact or in law) incident to presenting and obtaining allowance of its first account or any of its eight subsequent annual accounts. If, as plaintiffs now contend, additional information and more detailed facts might have been given to the probate court on the hearing of the respective accounts, it may fairly be concluded that plaintiffs herein, who failed to appear at any of such hearings notwithstanding the recipients of the current income of the estate were timely furnished copies of proposed reports, are at fault. Plaintiffs, after the intervention of years and changed conditions, have seen fit to come into equity and belatedly seek relief. The matters of which they now complain could have been and should have been presented to the court, if at all, incident to the hearing of the appropriate current annual account of the defendant. Not having done so, they are not entitled to relief in the instant case.

The remaining issue on this appeal is stated as follows in the respective briefs of plaintiffs and defendant:

(Plaintiffs) "Did the defendant deduct excessive fees from the estate and were the purported allowances of such fees contrary to statute and void?"

(Defendant) "Did the probate court have and properly exercise power to allow compensation for the services of the trustee in addition to the statutory commissions of an administrator?"

The circuit judge found that defendant trustee had unlawfully deducted or retained fees allowed by the probate court incident to the accounts filed by the trustee, and in consequence decreed:

"That the trustee forthwith pay into the funds of the trust estate the additional sum of $3,809.52 which sum with interest thereon the trustee is hereby surcharged on account of excessive fees which it has deducted over and above the amount allowed by law without any proper authority therefor."

The probate court was empowered by statute to fix and allow the fees of trustees. The statute read:

"In all accountings of trustees under this chapter, the probate court before which such accounting may be had, shall allow to the trustee his reasonable expenses incurred in the execution of his trust, and the same compensation for his services by way of commissions as is allowed by law to executors and administrators; and also, in all cases where to the court a further allowance seems proper, such additional sum for the services of such trustees as to the court in which his accounts are settled may be deemed just and reasonable." 3 Comp. Laws 1929, § 15896 (Stat. Ann. § 27.3075).

The fees which plaintiffs now claim were excessive and which for that reason were surcharged against the trustee by the circuit judge plainly appear in the trustee's first and eight subsequent annual accounts allowed by the probate court. While it was not essential to valid notice of hearing these accounts, the trustee prior to each hearing served by mail the two life beneficiaries with a copy of its current annual account. No objection to allowance of any of the accounts was made. We hold that the adjudicated allowance of these items cannot be assailed by plaintiffs in this subsequent suit in equity. As to the plaintiffs who were minors, a reason (if sound in fact) for such holding is well stated in defendant's brief and not denied by plaintiffs. We quote:

"So far as concerns the matters of trustee's fees all of the items are charged to and have been paid out of income except the commissions fixed by statute of which $4,046.42 have been taken. This charge of these items totaling $5,071.08 to income affects solely the income beneficiaries, Mrs. Thaw and Julien. No other beneficiary has been or can be affected thereby. This brings this part of the fee question squarely within the ruling of *Roberts* v. *Michigan Trust Co.*  \*  \*  \* (273 Mich. 91). No one was affected but the income beneficiaries. They were of full age. Whether or not the remainder beneficiaries should have had a guardian *ad litem* has no bearing. So far as concerns the statutory commissions of $4,046.42 charged to principal such commissions are fixed by statute and there is nothing to litigate or question as to the same."

However, we may add that our study and checking of defendant's first four accounts as allowed by the probate court raise a question as to whether in these accounts defendant, at least by its method of

keeping the accounts, did not charge against the corpus (rather than the income) of the estate some of the items allowed to it as compensation in addition to its statutory fees. Plaintiffs contend that since no guardian *ad litem* appeared for either of the two minor beneficiaries at these first four hearings of the trustee's accounts, such minors are not bound by the probate court's orders allowing them; at least if such allowances were in whole or in part charged against the corpus of the estate in which the minors have an interest. We are not in accord with this contention for the following reasons.

At most the total amount so charged against the corpus of the estate is comparatively small, and it is not established by the record that the charges allowed were improper charges or not justly allowed. Further, the last of these four accounts was allowed in November, 1934, but plaintiffs' suit was not commenced until July, 1941. Under our decisions hereinbefore cited (*Thompson* v. *Thompson, supra; Curtis* v. *Curtis, supra; Cohen* v. *Home Life Ins. Co., supra;* and *Home Life Ins. Co.* v. *Cohen, supra*) the minor beneficiaries are not entitled to relief. In the *Curtis Case* Chief Justice WIEST, writing for the court, said: "While an infant may not be guilty of laches, yet inexcusable delay has a bearing upon judicial discretion." And in the *Thompson Case* we held as stated in the syllabus:

"The law does not require that a guardian *ad litem* shall be appointed for a minor whose interests are affected by the order of the probate court disposing of an estate, but assumes that such interests will be protected by the court, and therefore the judgment of said court is binding on an infant, although no guardian *ad litem* was appointed."

We have not herein discussed all of the respective parties' contentions or reviewed the arguments advanced in support thereof, but they have been given careful consideration and we do not find, in them any persuasive reason why decision of the instant case should be other than hereinbefore indicated. Our conclusion is as follows:

(1) The holding of the trial court that it had jurisdiction, from which holding defendant has appealed, is affirmed. '

(2) The decision of the trial court that the trustee was "not negligent" in holding and not disposing of 260 shares of Detroit Edison stock and 80 shares of United States Steel stock is affirmed; this being a denial of relief sought in the trial court and on this appeal by plaintiffs.

(3) The provision in the trial court's decree surcharging the trustee with $2,673.63 together with interest thereon because of the trustee's "wrongful acts in purchasing from itself certain mortgage participation certificates" is affirmed, this decretal provision being admitted in defendant's brief. as a just adjudication.

(4) The trial court's decree is reversed wherein it vacates the allowance of the trustee's accounts in the probate court (except insofar as it pertains to the mortgage participation certificates mentioned in the next preceding paragraph) and surcharges the trustee on the theory of breach of its trust in not disposing of Federal bonds, in purchasing 52 shares of the Detroit Edison Company's stock, and on account of alleged excessive fees received by the trustee under the order of the probate court.

(5) The decretal provision that the trustee "is authorized and directed to disburse fees to plaintiffs' counsel for services in connection with this

suit," in the circuit court, and in case it becomes necessary to determine such fees jurisdiction for that purpose is reserved in the circuit court, is affirmed.

(6) The provision of the decree leaving for determination of the probate court the matter of the removal of the trustee is affirmed, no appeal having been taken therefrom.

Decree will be entered in this court in accordance with our decision herein. Plaintiffs will have costs against defendant in the circuit court. Defendant will have costs against plaintiffs in this court.

Boyles, C. J., and Chandler, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.