*In re* THOMPSON'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS — ESTATES OF DECEDENTS — RESIGNATION OF ADMINISTRATOR—APPOINTMENT OF SUCCESSOR.

   Where the administrator of an estate presented his resignation at the request of the judge of probate and an administrator *de bonis non* was afterwards appointed upon the petition of certain creditors, the action of the court was valid, though the final account of the first administrator had not been settled or allowed and he had not been formally discharged by order of the court. 3 Comp. Laws, §§ 9333 and 9334 (4 How. Stat. [2d Ed.] §§ 11049, 11050).

2. SAME—STATUTES—PRINCIPAL AND SURETY—BONDS.

   Under the proviso of section 9333, *supra*, the sureties on the bond of the administrator are not relieved until the final

adjustment of his account and it cannot be said that it was the legislative intention to suspend the administration of the estate until the account of the administrator had been filed and allowed.

3. SAME—APPEAL AND ERROR.

Evidence tending to sustain the finding of the circuit judge sitting without a jury that the price which the administrator had secured for certain real estate was reasonable and adequate, requires the court on error to affirm the conclusion so reached.

4. SAME—ACCOUNT—TAX TITLE—FINAL ACCOUNT OF ADMINISTRATOR.

Nor was error committed by the lower court in allowing as a part of the account certain expenditures of the administrator made in good faith to purchase a tax title that was held against property which decedent had conveyed by warranty deed to a third party, where the payment had been made on the advice of an attorney and with the consent of the probate court.

5. SAME.

A discount of $100 upon one of the mortgages of the estate that the administrator had negotiated, after making inquiry and securing the best available terms at that time, was properly allowed as one of the disbursements or credits, and was matter for the discretion of the circuit court.

6. SAME—BROKERS—COMMISSIONS.

The commission and fees of a broker paid to him by the administrator, who also claimed his statutory fees for selling real estate, should not be allowed as an expense of administration: the amount fixed by statute is the measure of compensation; to allow further fees would amount to a double payment, especially in a case in which the parties both admit that the administration is entitled to the claimed commission.

7. SAME—EXTRA COMPENSATION.

The probate judge has no authority to agree in advance that an administrator shall receive as his compensation $1,000 during the first year. Such an agreement could not be indirectly enforced by allowing it on appeal, as extra compensation, and an attempt so to do must be held unwarranted.

8. SAME—EXTRAORDINARY SERVICES.

   The matter of extra compensation is a subject for the probate court in the first instance and cannot be determined by the circuit court on appeal or by the upper court on writ of error.

Error to Osceola; Withey, J. Submitted November 21, 1913. (Docket No. 131.) Decided January 4, 1915.

Elmer F. Birdsall presented his account as administrator *de bonis non* of the estate of Edward C. Thompson, deceased. It was allowed in the probate court, and was affirmed in part and modified as to the matter of compensation by the circuit court on appeal. Blanche Cox and certain other heirs bring error. Reversed.

*Hall & Gillard,* for appellants.

*G. A. Wolf,* for appellee.

McALVAY, J. This case was an appeal by four heirs of the deceased from an order of the probate court of Osceola county allowing two annual accounts of E. F. Birdsall, administrator *de bonis non* of said estate, and was tried before the circuit court of said county without a jury. Said court, having made a finding of facts and conclusions of law, entered a judgment thereon in effect affirming the conclusions of the probate court, dismissed the appeal without costs to either party, and ordered the judgment to be certified to the probate court in accordance with the usual practice.

The facts necessary to be stated in this opinion are that deceased, who during his lifetime was engaged in the grocery business and farming in Evart, Osceola county, died intestate in May, 1907, leaving an estate of real and personal property which was inventoried

at the sum of $65,864.89, consisting mostly of real estate, against which there were liabilities in the nature of mortgage indebtedness, with accrued interest, and also unpaid taxes and claims allowed by the commissioners, all amounting to $26,536.43. After his death his son, Edward C. Thompson, was during the same month appointed special administrator of his father's estate, and later was appointed general administrator. He at once qualified and entered upon the duties of his office. Before his death the intestate executed and delivered quitclaim deeds of certain lands to three of his five heirs. In July, 1907, all of the heirs entered into an agreement which provided that the real estate so conveyed should be appraised as part of the estate of deceased and treated as a credit upon the share of each, after deducting all incumbrances against such property, and that each of the heirs should receive a one-fifth interest in his estate, including the deeded property, and that those who held the deeds should be considered as trustees for all the heirs. The son, from the time he was appointed administrator in May, 1907, acted in such capacity for said estate until December 13, 1909, during which time he filed no account of his acts and doings as such administrator. He filed such an account February 1, 1909, which was not acted upon until November 22, 1912.

In October, 1909, a creditor of the estate filed with the judge of probate a petition for his removal as administrator, upon which a citation was issued, which was never served. Later Blanche Cox, one of the daughters of deceased, filed a petition for the appointment of Elmer F. Birdsall as administrator *de bonis non*, on November 18, 1909, which was the date of the resignation of the son, Edward C. Thompson, as administrator, which resignation had been requested by the judge of probate. The petition for the appoint-

ment of an administrator *de bonis non* was heard and granted December 13, 1909, and the appointment duly made. The details of this transaction need not be stated further than it is undisputed that the judge of probate had promised the new administrator before his appointment that he would receive $1,000 as compensation for his first year's services if he would accept the appointment and assume the duties of the office. The new administrator immediately filed his bond, assumed the duties of his office, and took possession of all of the property belonging to the estate, and has so continued to act, as far as the record shows, up to the time of the hearing of this case. On June 17, 1910, such administrator *de bonis non* filed an account in the probate court as such administrator, and on January 30, 1911, he filed another account, which two accounts comprise his first annual account of administration of the estate. He filed his second annual account February 20, 1912. Before the hearing upon this second annual account was had three of the heirs of deceased, being the appellants in the instant case, filed objections in the probate court to certain items in both the first and second annual accounts, and also objections to the legality of his appointment and of certain sales and disbursements made by him. These objections were overruled, and an order was made by the probate court allowing the account on April 23, 1912. From such order an appeal was taken under the statute to the circuit court, where the proceedings of the probate court were affirmed. Four of the heirs of Edward C. Thompson have brought the case to this court for review upon writ of error.

This estate, as appears already from the statement of the amount at which it was inventoried, was of considerable size, and, as also appears, was quite

largely indebted upon mortgages and unsecured indebtedness. The record shows that its administration before the appointment of the administrator *de bonis non* was very unsatisfactory, and that at the time Mr. Birdsall undertook the duties of his office was not at all in a satisfactory condition. During the two years covered by the accounts of the present administrator he was actively engaged, and with fair success, in an attempt to relieve the estate from pressing indebtedness in the shape of mortgages and unsecured claims and to bring about a condition whereby as much as possible could be realized from the assets of the estate for distribution to the heirs. It will not be necessary to go into the details of his administration or the items of these accounts, except in so far as may be necessary in considering the specific objections which were made as to some of them and which were overruled by the trial court.

As already stated, the case was tried before the court without a jury, and findings of fact and conclusions of law were duly made and filed. Amendments to these findings and conclusions were proposed by appellants, and were all denied by the court and exceptions duly taken and errors assigned. These are all based upon the formal objections which were filed and considered upon the appeal heard in the circuit court. The errors assigned and relied upon will be considered in the order in which they were presented to this court by the appellants.

*First.* The first contention of appellants is that the appointment of Mr. Birdsall as administrator *de bonis non* was illegal, and consequently all his official acts were void, for the reason that his predecessor had not formally been discharged and his account settled. Supporting this claim, sections 9333 and 9334, 3 Comp. Laws (4 How. Stat. [2d Ed.] §§ 11049, 11050), are invoked. These sections read as follows:

"SEC. 9333. If an administrator shall reside out of this State, or shall neglect, after due notice by the judge of probate, to render his account and settle the estate according to law, or to perform any decree of such court, or shall abscond or become insane, or otherwise unsuitable or incapable to discharge the trust, the probate court may, by an order therefor, remove such administrator, and every executor and administrator, upon his request, may be allowed to resign his trust, when it shall appear to the judge of probate proper to allow the same: *Provided,* such executor or administrator shall, prior, and up to the time of his resignation, settle and adjust his accounts with the estate of which he may be executor or administrator: *Provided further,* that the sureties of such executor or administrator shall not be released from liability until such executor or administrator shall have fully settled and adjusted his accounts as aforesaid.

"SEC. 9334. When an administrator shall be removed, or his authority shall be extinguished, the remaining administrator, if any, may execute the trust; if there shall be no other, the court of probate may commit administration of the estate not already administered to some suitable person, as in the case of the death of a sole administrator."

The situation in the instant case was that the first administrator had filed his resignation leaving the administration of the estate incomplete and its affairs in an unsatisfactory condition. A necessity arose, as the probate court found, for the appointment of an administrator *de bonis non.* The record does not show that the resignation was accepted and the administrator discharged. It does show that an administrator *de bonis non* was at once appointed and entered upon the duties of his office, and that the former administrator took no further part in the settlement of the estate. It is an admitted fact that the first administrator had not settled and adjusted his accounts up to the time of his resignation. To

require him to do so was within the power of the
probate court, a prompt exercise of which would
have been highly proper. The statute relied upon by
appellants expressly saves the estate harmless to the
extent of an administrator's bond, stating in express
terms that:

"The sureties of such executor or administrator
shall not be released from liability until such executor
or administrator shall have fully settled and adjusted
his accounts as aforesaid."

It surely cannot have been the legislative intent to
hold up the administration of an estate until such time
as a former administrator's accounts could be adjusted.

We agree with the learned circuit judge that this
was a case where the court could very properly commit this administration to some suitable person, as
provided by section 9334, *supra,* and that the statute
relied on does not prohibit such appointment.

The second and third objections of appellants and
the errors assigned thereon are waived.

The errors claimed and relied upon under the
fourth, fifth, and seventh subdivisions of appellants'
brief will be considered together. They are as follows:

*Fourth.* That the sales of real estate to Mr. Beech
and Mr. Glerum were so low and for such an inadequate price as to be a fraud upon the heirs.
*Fifth.* That Mr. Birdsall paid claims which were
not a proper charge against the estate.
*Seventh.* Mr. Birdsall paid between $250 and $300
to real estate agents for expenses in connection with
the sale of the farm property, which is alleged to be
illegal and void.

The fourth group of errors relates to the sales of
two parcels of property made by the administrator

*de bonis non* under authority by the court to sell at private sale under which seven other sales were made. The whole proposition turns upon the question of inadequacy of price received for these two parcels. The record shows that considerable testimony was offered and received as to the adequacy of the prices received for the two sales, and that the testimony of the witnesses who were acquainted with the property as to values differed materially. The contention of appellants is that the overwhelming weight of this evidence was against the finding and conclusion of the court. That there is evidence to support the sufficiency of the price received on these sales is not disputed. The court in his conclusions as to value, therefore, was not in error in holding that the prices received were adequate.

Under the fifth subdivision of appellants' brief the claim is made that the administrator *de bonis non* paid certain claims that were not proper charges against the estate. The first of these is the sum of $100 paid to Mr. Riek, who held a tax deed against certain lands for the year 1881, which lands were acquired by deceased in his lifetime under a tax deed from the auditor general for the years 1892, 1893, and 1894, subsequent to the tax title of Riek. Some of these lands deceased conveyed by warranty deed to Ezra Pfohl, and the disputed $100 was paid for a quitclaim deed from Mr. Riek of that portion sold to Pfohl. The contention of appellants is that this was absolutely unauthorized and void; that no such claim was ever presented to the commissioners on claims; that the grantee of deceased had made no claim of breach of warranty. The court held that the payment, having been made under the advice of an attorney, with the consent of the probate court, was a proper payment. There is no question as to the

good faith of this settlement. It was not a question whether it was a claim against the estate, as the foregoing statement shows. The matter was submitted to a reputable attorney, who advised a settlement, which was accordingly made, and, under the circumstances, we think it was properly allowed.

The next item referred to is the sum of $100, a discount paid to a bank at Evart by the administrator in order to realize needed funds to use for the benefit of the estate. The record shows that he made inquiry of several banks in attempting to cash a mortgage of $4,500. The act, in our opinion, was one within his reasonable discretion, and the amount was properly allowed by the trial court.

*Seventh.* Under this subdivision of the assignments of error appellants claim that the payment by the administrator of 2½ per cent. to certain real estate agents for bringing about the sale of what is known as the farm property was illegal and unauthorized, and that the court was in error in allowing the same. That the services were rendered, and that the price charged was not unreasonable, is not in question. Appellants rely solely upon a construction of section 9438, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11149). This statute fixes fees for such services, to be paid to executors and administrators. Such fees are charged in this administrator's account, and appellants concede that they should be allowed at statutory rates. The contention that to this may be added the further percentage of $250 as commissions to the real estate agents involves the proposition that on the sale of real estate by an administrator the statutory fees may be disregarded. The exact question has never been passed upon by this court, and is one of considerable importance. In our opinion, the provision of the statute for commissions allowed execu-

tors and administrators on the sale of real estate is the measure of compensation for the discharge of such duties, whether the sales were made by the executor or not, and therefore that credit for commissions paid agents for effecting sales of real estate should not be allowed in addition to the statutory fees. This is the construction given by the supreme court of the State of Missouri to a somewhat similar statute. *Jacobs* v. *Jacobs*, 99 Mo. 427 (12 S. W. 457). See, also, *In re King's Estate*, 110 Mich. 203 (68 N. W. 154).

The administrator *de bonis non* elected to take as his compensation the statutory commissions on amounts collected upon all sales made by him, and has included the same in his account; therefore to allow this amount paid to real estate agents for the same services would be a double payment and illegal. The court was in error in allowing this item for commissions paid to the real estate agents, for the reason that it was not authorized.

*Sixth.* The sixth contention of appellants, which has been left to be considered last because of its importance as to amount and as to the question involved, is stated by appellants as follows:

"(6) That before Mr. Birdsall would accept the appointment of administrator Judge Chase agreed to pay him $1,000 as his fees for his first year's services, and Mr. Birdsall paid himself $1,025 as his fees for the first year."

The only reference by the court to this matter in the findings of fact is as follows:

"I find that Mr. Birdsall has rendered extraordinary service to the estate, for which he is reasonably entitled to extra compensation in the sum of $810."

And in the conclusions of law we find the following:

"The appeal for commissions and extra compensa-

tion, amounting in all to $1,025, presented and allow-
ed by Mr. Birdsall with his first annual account, is
objected to, because Mr. Birdsall was promised extra
compensation if he would assume the duties of the
office. The evidence tends to show that Mr. Birdsall
was reluctant to take the appointment, and was urged
to do so, and was indirectly informed that the probate
judge would allow him extra compensation. Such an
arrangement would be absolutely void, and it violates
every principle of the probate law, and I therefore
repudiate it. However, I have no doubt at all but
what Mr. Birdsall's ability as a business man saved
to the creditors of this estate and saves to the heirs
anything they get. Now, it would not be right to turn
him out of court without an extra allowance. And I
do not think the heirs can have a single thing to com-
plain of, except the way in which it was brought
about; the result was all right, in my opinion. While
I set aside the order of the probate court in this re-
spect, I will allow the compensation myself. And I
allow it at the same sum as was presented in the court
below—$810 extra compensation."

The court, in the conclusion of law just quoted,
repudiated the offer made by the probate judge to the
administrator previous to his appointment to pay him
for his services during the first year $1,000, as abso-
lutely void and violating every principle of the pro-
bate law, and set aside the order of the probate court
allowing compensation. After doing this, the trial
court, on its own initiative, allowed $810, the amount
in dispute in this matter, as extra compensation to
the administrator *de bonis non.* Appellants contend
that such action was erroneous.

A careful reading of all the testimony does not show
any oral evidence in the case to the effect that the
account of the administrator for compensation was
allowed at the time of the hearing of his first annual
account, April 4, 1911. All of the witnesses who testi-
fied upon the question, including the administrator,
agree that the account was before the court at that

time and was discussed at length. Several of these witnesses swear positively that it was not allowed at that time, and that the probate judge stated in open court that it would be passed for the present, and the hearing was adjourned. This first annual account was filed in two parts, as already appears in this opinion. The first part was filed July 15, 1910, and the second January 30, 1911. The record shows that an examination of the probate court records made by Mr. Hall, one of appellants' attorneys, March 20, 1912, showed no such order had been entered, filed, or indexed, and at that time the probate judge for the first time informed Mr. Hall that he had allowed the account in question, but had not made any order concerning it.

The record shows that this account for services, which included commissions for sales of real estate which are not contested, appears attached to, and as a part of, the second annual account of this administrator, which was not filed until February 20, 1912, and was passed upon April 23, 1912. It further appears undisputed that on January 10, 1911, the administrator drew his check No. 108 on the First State Savings Bank of Evart to his own order for $1,025. This check was paid February 8, 1911, and is printed in the record. It is not disputed that this was in payment of this claim for compensation, and was taken by him from the funds of this estate three months before its presentation and claimed allowance by the probate court.

Portions of what were represented to be the original files and records in this case were presented to this court and used by consent of counsel upon the argument of the instant case and were examined by the court. From these books and papers it appeared that the order claimed to have been made by the probate

court was not entered in due course according to the dates of orders before and after it, nor in the journal of the court, but appeared in what was labeled as "Miscellaneous Records No. 2," which book, it is claimed, was not offered in evidence on the part of the administrator or identified by the probate judge, who, although present in court during the trial, was not produced and sworn as a witness; and it further appeared that the date either on the order or the disputed account was first written April 4, 1912, and the 2 changed to 1, to make it read April 4, 1911. The only proof of this order offered on the part of the administrator was the order itself, as above described, which the record shows was found in the files of the case in March, 1912. It further appears that the claim that this disputed item for compensation belongs to and is a part of the second annual account is not supported by the evidence of the order itself, which shows that its allowance antedated the hearing of the second annual account by more than one year. Our conclusion is that, from the overwhelming evidence in this case, this disputed account was never allowed by the probate court. The proceedings which are claimed to have resulted in such action on the part of the probate court cannot be dignified by this court as regular judicial action, and must be considered as absolutely void and of no effect. This must be taken in connection with the undisputed agreement of the probate judge to pay $1,000 to the administrator for his first year's services. The trial court correctly took this view of the matter and set aside the action of the probate court.

The appeal made in this case from the allowance by the probate court for services to the administrator was on the ground that such order was made in pursuance of the agreement of the probate judge, already

stated, and was therefore absolutely void. Upon that theory this item was attacked by appellants, and the case was tried in the circuit court. Upon their appeal to this court the same contention is made. They have continually insisted that this was not an allowance of extra compensation contemplated by the statute, but that it was done in fulfillment of an agreement. The court held that "such an arrangement would be absolutely void, and it violates every principle of the probate law, and I therefore repudiate it," and thereupon set aside the order. Thereby the whole order of the probate court was set aside. No part of such an order could survive. It was all absolutely void. As already indicated, this claim for services included no element whatever based upon a claim under the statute for extra compensation. Such claims must be made primarily in, and passed upon by, the probate court. Questions upon the allowance or disallowance of such claims are first raised in the probate court, and only find their way to the circuit court for review by an appeal to that court. Therefore this question of the allowance of extra compensation under the statute to the administrator in this case was never properly before the circuit court for determination. The court, therefore, was in error in allowing the sum of $810 to the administrator for extra compensation. There was, however, due the administrator from the estate the sum of $215 commissions on sales of personal and real estate to which he was entitled under the statute and which has always been admitted by the appellants to be a legal charge against this estate and which must be allowed.

Some errors are assigned upon the rejection of evidence. They have been examined, and we are satisfied that they do not require consideration. This disposes of all assignments of error which have not

been waived in appellants' brief, except the matter of costs, which we grant appellants.

The judgment of the circuit court is reversed, and, as there are no disputed questions of fact to be determined, the case will be remanded to the circuit court, where a judgment will be entered in accordance with this opinion, with costs of both courts against the administrator *de bonis non,* to be taxed without prejudice to the presentation of the administrator's claim for compensation to probate court.

BROOKE, C. J., and KUHN, OSTRANDER, STONE, BIRD, MOORE, and STEERE, JJ., concurred.