*In re* WATSON'S ESTATE.

APPEAL OF WHITE.

1. EXECUTORS AND ADMINISTRATORS—ADJUSTMENT OF ACCOUNTS.
   Notwithstanding an administrator who voluntarily resigns may not have settled and adjusted his accounts up to the time of his resignation, an administrator *de bonis non* may be appointed and have power to act (Act No. 288, chap. 4, § 49, Pub. Acts 1939).

2. SAME—SALE OF REALTY TO PAY DEBTS—ACCOUNTING BY ADMINISTRATOR.
   Administrator *de bonis non* was properly granted license to sell real estate where administrator's supplemental account was allowed on the same day and it appears that the personalty was insufficient to pay claims theretofore allowed against the estate.

3. SAME—FINAL ACCOUNTING—RES JUDICATA.
   On appeal from order allowing administrator's final account, matters pertaining to his inventory and accounting from date of appointment to first annual account at which objecting heir appeared, was represented by counsel and sought removal of administrator, were *res judicata* where same fraud is now alleged as previously and no appeal was taken from order allowing such annual account and denying petition for removal.

4. SAME—INTEREST—SURCHARGE—LOSS TO ESTATE.
   Administrator was properly not surcharged on final account with interest upon claims allowed against estate by reason of alleged neglect in failing to sell assets, where personalty was insufficient to pay debts, it was necessary to use farm, the major asset of the estate, to provide a home for decedent's invalid widow, also an heir, no bad faith on the part of the administrator was shown, the matter was open to the objecting heir at time of first annual account and estate has sustained no loss because of such nonaction by administrator.

5. ESTATES OF DECEDENTS—SALE OF REALTY—CREDIT ON DISTRIBU-
TEE'S SHARE.

Sale of remaining real estate in estate to pay debts was proper
where admitted obligation of one of the heirs to the estate
was not in such an amount that even when deducted from his
distributive share necessity for sale of the real estate would
be obviated.

6. EXECUTORS AND ADMINISTRATORS—CLAIM AGAINST EXADMINIS-
TRATOR FOR OCCUPANCY OF PREMISES BELONGING TO ESTATE.

Where administrator had occupied farm, the principal asset
of the estate, and charged rent to himself individually, claim
against him for rent after he had resigned and an adminis-
trator *de bonis non* was appointed was a matter for adjust-
ment between the administrator *de bonis non* and the
exadministrator, as tenant, and was not a matter for deter-
mination on appeal from final account of administrator.

7. SAME—ADVANCE TO WIDOW—EXPENSES OF ESTATE.

Claim by administrator against estate for care of invalid widow
of decedent was properly disallowed as an expense of the
estate, since it was an advance made to her and was properly
deductible from her distributive share.

8. SAME—STATUTE OF LIMITATIONS—SMALL CLAIM—NEGLECT OF
FIDUCIARY.

Refusal to allow surcharge against administrator for amount of
$48 claim of doctor and interest thereon and which was al-
lowed by the probate court was proper notwithstanding claim
may have been outlawed, where record does not show neglect
on part of administrator, as claim in such an amount was not
appealable (Act No. 288, chap. 8, § 3, Pub. Acts 1939).

Appeal from St. Clair; George (Fred W.), J.
Submitted January 7, 1947. (Docket No. 10, Cal-
endar No. 43,531.) Decided April 17, 1947.

In the matter of the estate of Harvey D. Watson,
deceased. On final account of former administrator
and petition for license to sell by administrator
*de bonis non*. Phoebe L. White objected. Account
allowed and license to sell entered. Objector ap-
pealed to circuit court. Order allowing final ac-

count as amended and granting license to sell. Objector appeals. Affirmed.

*Watson & Inman,* for administrator.

*Raymond A. Fox,* for appellant.

BUTZEL, J. Harvey D. Watson, a farmer, died intestate in 1932. Upon the petition of his widow, a son, Harvey A. Watson, was appointed administrator. He filed his bond, duly qualified, and letters of administration were issued to him on April 25, 1932. An inventory was filed on October 17, 1932, together with the appraisers' warrant and report listing personal property valued at $310 and 205 acres of farm land in the township of Mussey, St. Clair county, Michigan, appraised at $4,800. No cash or liquid assets were left available for the support or maintenance of the widow, or for a widow's allowance. Prior to the death of the intestate, the son had worked the farm with his father on a share basis. Upon his appointment as administrator, he continued to work the farm under what was characterized by the trial court as a "family arrangement," whereby provision was to be made for the support of the widow.

In May, 1938, Phoebe L. White, daughter of the deceased and appellant herein, filed a petition for the removal of her brother as administrator, alleging maladministration, failure to adequately provide for the care of the widow and various acts of malfeasance, including failure to file accounts. An accounting was thereupon filed covering the period from the date of appointment to May 18, 1938. A hearing was had on said account and petition whereupon the probate court allowed the account and denied the petition for removal. No appeal was taken from the order of the probate court.

In June, 1939, the appellant again filed a petition for the removal of Harvey A. Watson as administrator, whereupon the latter filed a final account covering the period from May 18, 1938, to July 1, 1939. No hearing was had on this account or on the second petition for removal. The administrator, however, submitted his resignation on January 9, 1940, effective as of December 1, 1939, which was accepted by the probate court; and upon petition of the widow an order was entered that same day appointing Lee R. Glassford administrator *de bonis non*. Appellant signed a waiver of notice of hearing and made no objection. Glassford qualified as administrator *de bonis non* and has continued to act in that capacity.

On June 27, 1939, the first petition for a license to sell real estate was filed by Harvey A. Watson, administrator. An order granting license to sell two parcels of land was entered on August 9, 1939, which was never acted upon by the administrator. In his capacity as administrator *de bonis non,* however, Lee Glassford sold the two parcels for the sum of $2,178, and applied the proceeds to the discharge of a mortgage on the farm property and the payment of delinquent taxes thereon. On July 28, 1943, the administrator *de bonis non* filed a petition for license to sell the remaining real estate for the purpose of paying allowed claims still outstanding against the estate in the amount of $1,667.67. No formal order having been entered allowing the final account of the original administrator, a supplemental final account was filed by him on March 22, 1944, together with a petition seeking remuneration for extraordinary services. A hearing, at which appellant was represented by counsel, was had upon said petition and final account and upon the petition of the administrator *de bonis non* for license to sell. On May 19, 1944, the probate court entered two

orders, one allowing the supplemental final account of the original administrator after reducing the item of administrator's fees from $350 to $200, and the other granting the license to sell the remaining real estate. An appeal from both orders was heard by the circuit court for the county of St. Clair.

The circuit court found that all matters pertaining to the estate up to May 18, 1938, had been previously adjudicated and that the only issues then before the court concerned the propriety of the final account covering the period from May 18, 1938, to December 1, 1939, and the license to sell the remaining real estate. The court went on to hold that the license to sell for payment of debts was properly filed and confirmed the allowance of the probate court. With respect to the various disputed items of the final account the court found as follows:

1. That the correctness of the inventory and appraisal made 12 years prior thereto and the failure to account for stock, tools, et cetera, not shown on the inventory, had been fully and properly adjudicated in the probate court;

2. That the "family arrangement" whereby the administrator charged himself $200 per annum for the rental of the farm without an order from the probate court, although somewhat irregular, was pardonable in view of the fact that some arrangement had to be made for the care and support of the invalided widow who was an heir at law and had inherited a widow's interest in the estate; that practically all of this money had been used for that purpose; and further, that the amount so distributed to her was allowed as an expense in the account of May 18, 1938, and is now *res judicata;*

3. That it appeared from the items charged that the money spent for the care and support of the

widow was for necessities and not allowable as expense, but that such were considered proper advances against the widow's share in the estate;

4. That the reasonableness of the $200 per annum rental which had been passed upon twice by the probate court was sustained by competent testimony;

5. That a note of the administrator in the amount of $488 had been improperly allowed as a portion of the claim of the Capac State Bank against the estate and should be charged against the administrator unless already discharged by him as he claimed;

6. That the administrator had not demonstrated bad faith in failing to sell the farm during the period of his incumbency inasmuch as it was necessary to provide a home for the widow and because it did not appear that a sale at that period would have been to the advantage of the estate;

7. That certain items in addition to that listed as "care of Mrs. Watson," should not be charged as expense against the estate but rather as an advance made to the widow and thus deducted from her distributive share. In accordance with the foregoing, the court entered an order amending the final account of the administrator and ratifying the order of the probate court granting the administrator *de bonis non* license to sell the remaining real estate. Phoebe L. White, an heir of the estate, appeals from that order.

Appellant contends that the trial court did not have jurisdiction to order a sale of real estate to pay debts on the petition of an administrator *de bonis non* who was appointed upon the resignation of an administrator whose resignation did not comply with the provisions of Act No. 288, chap. 4, § 49, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–

4[49], Stat. Ann. 1943 Rev. § 27.3178 [300]), requiring a hearing on the administrator's petition and an accounting. In the instant case a final account was submitted when the resignation was tendered to the probate court. No hearing was had on this account or on appellant's second petition for removal of her brother as administrator. The administrator's resignation was accepted by the probate court and an administrator *de bonis non* appointed the very same day. The case of *In re Thompson's Estate,* 183 Mich. 618, concerned a somewhat analogous situation; at page 624 therein, this Court said:

"The situation in the instant case was that the first administrator had filed his resignation leaving the administration of the estate incomplete and its affairs in an unsatisfactory condition. A necessity arose, as the probate court found, for the appointment of an administrator *de bonis non.* The record does not show that the resignation was accepted and the administrator discharged. It does show that an administrator *de bonis non* was at once appointed and entered upon the duties of his office, and that the former administrator took no further part in the settlement of the estate. It is an admitted fact that the first administrator had not settled and adjusted his accounts up to the time of his resignation. To require him to do so was within the power of the probate court, a prompt exercise of which would have been highly proper. The statute relied upon by appellants expressly saves the estate harmless to the extent of an administrator's bond, stating in express terms that:

" 'The sureties of such executor or administrator shall not be released from liability until such executor or administrator shall have fully settled and adjusted his accounts as aforesaid.'

"It surely cannot have been the legislative intent to hold up the administration of an estate until such

time as a former administrator's accounts could be adjusted.''

Appellant seeks to distinguish *In re Thompson's Estate, supra,* from the case at bar on the ground that in the former the probate court had itself requested the resignation of the administrator, whereas in the instant case the administrator had resigned voluntarily; also, that this Court treated the question in the *Thompson case* as one of removal of an administrator by court action under 3 Comp. Laws 1897, § 9333, which was the forerunner of Act No. 288, chap. 4, § 48, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–4[48], Stat. Ann. 1943 Rev. § 27.3178[299]), whereas the case at bar must be regarded as governed by Act No. 288, chap. 4, § 49, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–4[49], Stat. Ann. 1943 Rev. § 27.3178[300]), requiring a hearing on the administrator's petition and an accounting. It is noted, however, that section 9333, *supra,* contained a proviso to the effect that the administrator should settle and adjust his accounts with the estate prior to his resignation; and that this Court in the *Thompson Case* was persuaded by the logic of the probate court's action to hold that appointment of an administrator *de bonis non* was not illegal, notwithstanding that the administrator had not settled and adjusted his accounts up to the time of his resignation. We are constrained to do likewise in the instant case. Here the appellant had twice petitioned for the removal of her brother as administrator. Her first petition was denied and no appeal was taken from the order of the probate court. It is rather obvious that the administrator, harassed by these repeated attempts by his sister to end his administration of this comparatively small estate, ''voluntarily'' submitted his resigna-

tion to the probate court. Appellant waived notice of hearing and made no objections to the appointment of Glassford as administrator *de bonis non,* which, if not in itself a consent to the latter's appointment, was an implied consent to the resignation of the administrator. In view of the foregoing, there is little to recommend a result different than that reached by this Court in the case of *In re Thompson's Estate, supra.*

It is also appellant's contention that the trial court should not have granted the administrator *de bonis non* license to sell real estate when the administrator's final account had not been allowed and the administrator *de bonis non* had not filed an accounting for a period of over four years during which he held his appointment. The record indicates, however, that the probate court did not grant the administrator *de bonis non* license to sell real estate until the administrator's supplemental final account had been allowed, both orders having been entered on the same day. The record further indicates that the inventory of the administrator filed October 17, 1932, showed real estate valued at $4,800, and personalty valued at $310; and the order allowing claims made against the estate on that same date showed claims allowed in the amount of $2,027.38. Thus it is apparent from the record that there was an insufficiency of personalty with which to pay the debts of the estate. The administrator *de bonis non* testified that $2,178 was realized from the sale of 80 acres of farm land in 1940, and that this sum of money was used to discharge a mortgage on the farm, pay delinquent taxes, and provide a widow's allowance for Mrs. Harvey D. Watson; and that there was about $200 in cash and personalty remaining with which to meet unpaid claims against the estate in the approximate amount of $1,200. His

petition for license to sell real estate, filed in July, 1943, stated that the outstanding debts of the estate were $1,667.67. The testimony of the administrator *de bonis non* was not contradicted at the hearing; and the probate court was fully satisfied that there was an insufficiency of personalty with which to meet the allowed claims still outstanding against the estate.

The remaining questions raised in this appeal relate to the order of the circuit court allowing the final account of the administrator. Appellant alleges that the administrator acted fraudulently in failing to list as an asset of the estate his own joint liability on notes signed with the deceased, in permitting his own debt to be allowed as a claim against the estate, in charging the estate with bills for the care and maintenance of the widow, in failing to list fully in his inventory the livestock on the farm, and in renting the farm to himself without consent of the heirs or approval of the court. It was this same alleged fraud which prompted appellant's first petition for removal of the administrator. The latter's first annual account and appellant's petition were before the probate court on the same day. Appellant made an appearance and was represented by counsel. The court allowed the account and denied the petition for removal. No appeal was taken therefrom, in consequence of which the circuit court properly held that all matters pertaining to the administrator's inventory and accounting from the date of his appointment to May 18, 1938, the date of the account, were *res judicata*. *Thaw* v. *Detroit Trust Co.*, 307 Mich. 6.

With reference to appellant's claim that the administrator should be surcharged with interest on all claims allowed against the estate after the first year by reason of his alleged neglect in failing to

sell assets to pay debts, the circuit court properly took into consideration the fact that it was necessary to provide a home for the invalided widow who herself had a one-third interest in the farm and that in view of this "family arrangement," the burden was upon appellant to establish bad faith on the part of the administrator which was not done. Moreover, the court noted that this claim was available to appellant at the hearing on her first petition to remove the administrator; and, further, that the estate had suffered no loss therefrom inasmuch as the property would bring a higher price in the present market.

Counsel for the appellee acknowledge the latter's personal liability on a note allowed as a claim against the estate in the amount of $488, and state that this note has since been discharged and a receipt filed with the probate court, a copy of which was furnished appellant's counsel. They further acknowledge appellee's obligation to the estate in the sum of $343.70, with interest, representing his liability on three notes signed jointly with the deceased, which amount may be deducted from appellee's distributive share. The necessity for a sale of the remaining real estate would not be obviated by crediting the estate with the above sum.

The lower court found that the probate court had twice determined that $200 per annum was a fair rental for the farm because it was necessary that the tenant look after the care of the widow. This was not contradicted by appellant's witness who testified to prevailing rentals of similar farm land during the years 1938 and 1939. Appellant's claim for an extra quarter year's rental for the administrator's continued occupancy after his resignation is a matter to be adjusted between the former administrator as a tenant and the administrator

*de bonis non.* With reference to the item of $343.42 for "care of Mrs. Watson," the lower court correctly ruled that such should not have been charged against the estate as an expense but rather as an advance made to the widow and might properly be deducted from her distributive share.

Finally appellant contends that the administrator should be surcharged with the amount of a claim with interest allowed against the estate after the statute of limitations * had run against the claim. The claim was that of Dr. Howard R. Johnson for $48 and became due on February 6, 1932. Letters of administration were issued April 25, 1932. Dr. Johnson's claim was not filed until June 30, 1938. Appellant contends that the claim became outlawed February 6, 1938, and the filing of the claim on June 30, 1938, came too late. The probate court allowed the claim. The record does not satisfy us that there was any neglect on the part of the administrator. There could be no appeal as the amount was under $50.†

The orders of the trial court are affirmed, and the case remanded to the circuit court for proper action. Appellee will recover costs.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.

---

* See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—REPORTER.

† See Act No. 288, chap. 8, § 3, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–8[3], Stat. Ann. 1943 Rev. § 27.3178[413]).—REPORTER.