[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 13 
Thomas M. Peck, a wealthy citizen of Grand Rapids, Michigan, died in 1913, leaving a will and numerous codicils. In the will he left two parcels of property, one on Monroe street and the other on Wealthy avenue, in Grand Rapids, to John E. Peck and Roger W. Butterfield, in trust,
"To collect the rents, income and profits thereof, and from the moneys so collected to pay the taxes and assessments on premises and to pay to my beloved wife, Emily A. Peck, the sum of $2,500 per annum in monthly payments during her natural life, and out of the balance of said income, if any, to pay *Page 14 
the expenses of said trust, including a reasonable compensation to my trustees, and for the repairs of said premises, and if a balance of said income shall remain, then up to the settlement of my estate it shall be paid to my executors to be disposed of under the other provisions of this will. After the settlement of my estate any such surplus of income over and above the amount for the payment of taxes, said annuity, expenses and repairs, shall be held by my trustees and invested and reinvested, and shall constitute a fund out of which may be paid extraordinary repairs; or from which may be made up any deficiencies arising from any cause in the moneys to be paid for annuity or expenses of said trust. In case the building on said premises, or any part thereof, shall be destroyed during the continuance of this trust * * * or become so dilapidated * * * that repairs * * * be necessary for which the provisions herein made should not be sufficient, then I authorize my said trustees to borrow money and mortgage said premises to procure funds for the purpose of making such construction or repairs; and at the death of my said wife that the property herein mentioned as belonging to said trust, including all income, or its proceeds not paid over, in the hands of my trustees go to and be divided between my brother, John E. Peck, and my sister, Catherine A. Peck, share and share alike."
The will also gave his widow the homestead together with the household goods and personal belongings. It stated:
"The devises and bequests made to or for the benefit of my wife, Emily A. Peck, including the provision for her in the second paragraph of this my will, are in lieu of dower and of all other claims against my estate, and I direct that in case for any purpose it shall become necessary to sell any of my property in the settlement of my estate, that all of my other property be exhausted before the property given to her, or for her benefit be diminished *Page 15 
in any manner. It being my purpose that the provisions for her shall have priority over all the other legacies or devises of this my will."
In the first codicil, he increased the annuity to his wife to $4,000 a year and directed the trustees to pay it to her out of the net income of the property. He also added another piece of property on Library street to the trust. In a subsequent codicil he also made an additional bequest of $50,000 to her. Regular payments of $4,000 per year were made to the widow for approximately 20 years. During that entire period the income from the property was more than sufficient to pay the taxes, expenses of the trust, repairs, et cetera, and the $4,000. During the year ending June 16, 1933, however, the income from the trust property was insufficient for operating the trust so that the Michigan Trust Company which had become the successor trustee advanced $1,058.74 out of its own funds to cover the overdraft. However, during many if not all the previous years the annual income was far in excess of the amounts necessary to pay the annuity, taxes and other expenses. For the year ending June 16, 1925, and for each year thereafter up to and including June 16, 1932, the Michigan Trust Company made large payments of the surplus aggregating $38,700 to Percy S. Peck and Clara Peck Caulfield, each receiving one-half of such sums. They at that time had become entitled to the remainder interest in the property in trust. The original remaindermen under the trust were testator's brother and sister, John E. Peck and Catherine A. Peck, now both deceased. Catherine A. Peck had transferred her interest to John E. Peck, who in his will devised his interest in the trust property, one-half to his son Percy, one-half in trust to his daughter Clara Peck (Caulfield) subject to the rights of Emily A. Peck. It is not *Page 16 
necessary to detail other facts in regard to the estate. There is no criticism of the management of the trust with the exception of the payments of large sums of the surplus income, aggregating the sum of $38,700, to the remaindermen, and also the sale of the Wealthy street property. Appellants do not attack the sale of the Wealthy street property in their brief.
Appellant contends these payments were wrongfully made and in violation of the express provisions of the will as hereinbefore quoted; that this was such a breach of trust as to entitle Lydia B. Miller, as executrix of the Emily A. Peck estate, appellant, to recover the sum of $17,644.11 from the Michigan Trust Company, appellee, in both its individual and trust capacity. This amount is the sum of the difference each year between the $4,000 annuity provided for in the will and codicils and the $2,400 per year paid to Mrs. Peck from February, 1934, to her death in November, 1944. The record shows that if the payments of $38,700 had not been made to the remaindermen but had been invested and held as a reserve to be used in the subsequent years when the income decreased, there would have been more than sufficient to pay Mrs. Peck $4,000 per year. In 1933 the income from the trust properties had dwindled so that the trust company was no longer able to pay Mrs. Peck $4,000 per year and the taxes and other expenses of the trust from the annual income. In 1934, the trust company discontinued such payments at the rate of $4,000 per year. Mrs. Peck retained a law firm in Grand Rapids, and particularly Mr. Mark Norris of that firm. He wrote a letter, dated February 6, 1934, addressed to the Michigan Trust Company, in which he stated that the trust estate had been depleted by the improper payment of over $38,000 to the remaindermen, and also by the sale of the Wealthy street property and wrongful *Page 17 
use of the proceeds therefrom. He demanded that the trust company pay Mrs. Peck at once the difference between what they had paid to her the last year and the sum of $4,000, and also continue the payment of $4,000 per year until the termination of the trust. The Michigan Trust Company was represented by a law firm who acted through Mr. Willard F. Keeney of said firm. The attorneys for both parties entered into negotiations to settle their differences if possible. As a result of these negotiations Mr. Keeney sent a letter to Mr. Norris on September 28, 1934. It stated that after further conference with the Michigan Trust Company relative to the proposed adjustment of the claims of Mrs. Peck to the annuity under her husband's will, it had agreed in case the net rentals of the Monroe avenue and Library street building (one parcel of property having been disposed of) after payment of taxes, expenses and trustee's fees, were insufficient to pay the $4,000, the trust company would contribute from its own funds any deficit thus arising so as to permit the payment to Mrs. Peck of the sum of $200 per month, in accordance with the recent discussion. These advances would begin the first of February, 1934, and continue in any event through January, 1935, and for such period thereafter as both parties remained content with this arrangement. Either party had a right to discontinue the arrangement after January 30, 1935. The arrangement was carried out up to the time of the death of Mrs. Peck, neither party having given notice of discontinuance. The letter stated that Mrs. Peck should not claim against the trust company payment for any period prior to the date of such discontinuance. The letter also referred to Mrs. Peck's claim for an accounting to pay her the full annuity of $4,000 a year whether realized out of current rentals or not, and to the trust company's denial of her claim in that regard *Page 18 
and to its insistence there was no liability upon its part. The letter also stated that the arrangement made should not be construed as a waiver of either party of his or her rights in the controversy except that no further claims should be asserted against the trust company for the period that the $200 per month was paid by it to Mrs. Peck and received by her pursuant to the provisions of this letter. The letter further asked that the writer be advised whether the various points specified in the letter were approved by Mrs. Peck. On October 11, 1934, she signed an indorsement on the letter to the effect that the arrangement evidenced by the foregoing letter was agreed to. The settlement arrangement was never approved by the probate court and, as we shall show, it was not necessary to secure such approval.
The trustees named in the will both died and on November 20, 1920, the Michigan Trust Company was appointed successor trustee. It made the payments to the remaindermen as hereinabove stated and since February, 1934, paid $200 a month to Mrs. Peck during the balance of her lifetime. Neither Mrs. Peck nor the trust company at any time terminated the agreement that she receive the $200 per month. She died prior to the time the payment of November 16, 1944, became due. Payments aggregating $25,875 had been made to her. This was $91.66 less than the $200 per month provided for during the period after the settlement had been made and the trust company, after the death of Mrs. Peck, paid the sum of $91.66 to plaintiff as executrix of her estate. The parties stipulated that the rents collected from the properties in the trust for the period from January 16, 1934, to November 11, 1944, after deducting therefrom only the taxes and assessments on such properties, were more than sufficient to pay Mrs. Peck the annuity of $4,000, for *Page 19 
the period from January 16, 1934, to November 11, 1944, but if in addition to such taxes and assessments the expenses of the trust including operation of buildings and repairs, and trustee fees were deducted, then the remaining income was insufficient, by the amount of $1,649.73 to pay Mrs. Peck the sum of $2,400 a year during such period. The trust company filed annual accounts each year with the probate court and they were duly allowed. They showed the payments made to the remaindermen as well as to Mrs. Peck, and further a copy of such account was regularly sent to Mrs. Peck. In the annual accounts filed and allowed by the probate court covering the period from 1934 on payments to Mrs. Peck were specifically described:
"Payments on account of annuity authorized by paragraph 2 of the will of Thomas Peck, deceased, and by the first codicil thereto: The payments of $200 a month being made in accordance with the arrangements evidenced by a letter written by Butterfield, Keeney Amberg, attorneys, under date of September 28, 1934, bearing the written approval of Emily A. Peck dated October 11, 1934."
The final account was filed January 17, 1946, and in it the trust company claimed an overpayment of $1,649.73 advanced out of its funds to make the payments of $2,400 a year to Mrs. Peck, and asked that it be reimbursed for that amount from the property remaining in the estate or the income received since November 11, 1944. The probate judge allowed the final account and the right to such reimbursement. Appellant-contestant below appealed from the order of allowance to the circuit court for Kent county. The circuit court allowed the final account except it held appellee was not entitled to reimbursement for the $1,649.73. The circuit judge held that the payments of $38,700 made to the remaindermen *Page 20 
were improper and unauthorized under the will and codicils, but any claim was barred by the settlement that had been made, and further by the allowance of 23 annual accounts filed in the probate court.
Contestant has appealed and appellee filed a cross appeal evidently to preserve the rights in case of an adverse decision on the main points in the case. Cross-appellant claims the court erred in holding that the $38,700 paid to the remaindermen was improperly paid, although in spite of this fact, that appellant was not entitled to recover. Cross-appellant contends and insists that the payments to the remaindermen were proper and the failure to make such payments would have constituted an invalid accumulation from the rents and profits of land as there was no other property in the trust. It relies on 3 Comp. Laws 1929, § 12958 (Stat. Ann. § 26.38), which declares all the accumulations of rents and profits of land except the accumulation during the minority of the beneficiaries are invalid. Mrs. Peck was not a minor and the moneys were paid to persons presumptively entitled to the next eventual estate. Appellant, however, contends that the payments were absolutely improper and the moneys should have been used to provide a fund to insure payments of the annuity in future years.
Appellant calls our attention to a number of cases where we held such accumulation was proper but the trust estate consisted of both real and personal property. In the trial brief in the circuit court, it is claimed that counsel for appellees conceded that payments were contrary to the provisions of the second paragraph of the will which provided that after the settlement of his estate any surplus of the income should be held to pay for any extraordinary repairs or to make up any deficiencies arising in the income for the payment of the annuity or expenses. *Page 21 
It further calls attention to provision 9 of the will which stated that the provisions for the support of Mrs. Peck should have priority over all other legacies and devises of the will. InToms v. Williams, 41 Mich. 552, the accumulation of funds was sustained but the Court stated that the specific fund came out of a mixed fund of land and personalty. In Wilson v. O'Dell,58 Mich. 533, an accumulation was held invalid when the source of the accumulation was solely land and the accumulation went beyond minorities.
It is not necessary for us to pass upon the question in this particular case except to indicate that the alleged improper payment of the remaindermen was assented to by Mrs. Peck's attorney when the settlement took place in 1934.
Another subject of controversy in 1934 was whether the sums to be paid to Mrs. Peck were to be paid from the gross income from the property after the taxes without first deducting the expenses of the trust including a reasonable compensation to the trustee and repairs of the premises, or whether, as stated in the codicil dated April 9, 1908, increasing the amount from $2,500 to $4,000, they were to be paid from the net income of the property. It will thus be seen that there was an honest dispute between the parties when their attorneys arranged the settlement.
Appellant claims, however, that the settlement was not approved by the probate court and was not signed by the trust company. There is no question as to the authority of Mr. Keeney to act for the trust company which fully carried out the settlement agreement. Mrs. Peck recognized such authorization by signing the agreement sent by Mr. Keeney. On the strength of it $200 per month was paid out each month and accepted by Mrs. Peck.
The arrangement set forth in the agreement was *Page 22 
never terminated and the trust company paid out an amount in excess of its receipts after proper provision for maintenance, repairs, et cetera, and its fees were deducted. It was not necessary to secure the consent of the probate court to the settlement as there were no minors or unknown heirs involved. The court encourages settlements where there is no fraud or mistake and the parties are of age, particularly so where there is a full understanding of the provisions in the settlement and the parties are represented by able counsel.
Counsel for appellant calls attention to the case ofKachanowski v. Cohen, 305 Mich. 438, where it was shown by the records and briefs interests of minors were involved in the settlement, and under the circumstances we held that a judicial approval of settlement was necessary. Under the facts in that case the agreement of settlement contravened the statute necessitating judicial approval. Act No. 288, chap. 2, §§ 45, 48, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 16289-2[45], 16289-2[48], Stat. Ann. 1943 Rev. §§ 27.3178[115], 27.3178[118]) sometimes called the Dodge act, does provide a method for securing approval of settlement by the probate court and the purpose of the act principally was to allow settlements to be made with approval of the court so as to bind minors and unborn heirs and others whose present existence or whereabouts cannot be ascertained, et cetera. It does not prevent settlement of controversies by parties legally competent to act in their own behalf. Dodge v. Detroit Trust Co., 300 Mich. 575, 613.
Appellant, however, claims that the agreement of settlement was made without any consideration. The agreement itself shows that there was ample consideration, inasmuch as the trust company agreed to pay Mrs. Peck $200 per month for a certain period, and thereafter subject to termination *Page 23 
whether the income from the trust amounted to $200 or not.
The judge properly came to the conclusion that the payments of the various amounts, the full disclosure of each being made in the annual accounts and the allowance of such accounts, constituted res judicata and was final and conclusive on appellant. There is no question of any fraud or concealment. Each account listed in detail all items of income and expense including the payments of $200 per month in accordance with the arrangements made by the attorneys for the respective parties, each of said accounts was approved and allowed by the probate court after due notice of hearing by publication as required by law and copies of said accounts were sent to Mrs. Peck prior to the date of the hearing. No appeal was taken from the allowance of any one of these accounts except the one pending.
We have repeatedly held that the approval of an account by the probate court in the absence of fraud and concealment is final. 3 Comp. Laws 1929, § 15900; Act No. 288, chap. 4, § 39, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-4[39], Stat. Ann. 1943 Rev. § 27.3178 [290]). Heap v. Heap, 258 Mich. 250; Chapin v.Chapin, 229 Mich. 515; Thompson v. Thompson, 229 Mich. 526;Roberts v. Michigan Trust Co., 273 Mich. 91; Thaw v.Detroit Trust Co., 307 Mich. 6; In re Watson's Estate,317 Mich. 504.
Appellant further claims that settlement was made with the trust company in its individual capacity and not as trustee. It is difficult for us to see the distinction. In any event, appellant is bound by the final accounts approved by the court.
In the cross appeal, cross-appellants claim that the judge erred in disallowing its claim of $1,649.73, the overpayment made by cross-appellant. While *Page 24 
we are inclined to fully agree with the reasoning of the court that cross-appellant must accept the bitter with the sweet, nevertheless we have always held that in an appeal from the probate court, the circuit court is limited to the questions raised on appeal. In re Beers, 148 Mich. 300; In re Broffee'sEstate, 206 Mich. 107; In re Murray's Estate, 219 Mich. 70;Johnson v. Bullard, 241 Mich. 170; In re Astolas' Estate,282 Mich. 675; In re McLouth's Estate, 290 Mich. 311; In reLaFreniere's Estate, 316 Mich. 285; Act No. 288, chap. 1, § 36, Pub. Acts 1939, as amended by Acts Nos. 26, 176, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 16289-1[36], Stat. Ann. 1943 Rev. § 27.3178[36]). As a matter of fact appellant is not interested in the allowance or disallowance of this particular claim which comes out of the residuary estate. For this reason they make no point of it in the appeal to this Court. The remaindermen have not appealed from the allowance of the claim for the overpayments by the probate court and even though we may be in full accord with the reasoning of the circuit court, nevertheless, the question was not before the circuit court for decision. For this reason, the order of the circuit court allowing the trustee's account is affirmed with the exception of the disallowance of the appellee's claim for the $1,649.73 overpayment.
The case is remanded to the circuit court to enter an order in accordance with this opinion, and thereupon remand the case to the probate court for Kent county. Defendant will recover costs.
BUSHNELL, C.J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred. *Page 25