MUSIAL  v. YATZIK.

1. TRUSTS—RESULTING TRUSTS—CONSIDERATION PAID BY ANOTHER
   THAN THE ALIENEE OF A CONVEYANCE.
   Title vests in person named as the alienee of a conveyance of
   real property even though a valuable consideration is paid
   by another, no resulting trust arising in favor of the latter
   except as provided by statute (CL 1948, § 555.7).

2. SAME—ORAL PROMISE TO RECONVEY.
   An oral promise to reconvey real property creates an unen-
   forceable parol trust only, in the absence of fraud.

3. COMPROMISE AND SETTLEMENT—CONSTRUCTION.
   The law looks with favor on fairly made settlements and they
   are conclusive on the rights of the parties to them.

4. SAME—TENANCY IN COMMON—DURESS.
   The settlement agreement whereby plaintiffs, who had con-
   tributed substantially toward payments made on house to
   which defendants, parents of plaintiff wife, contributed
   balance of payments and took title in their own name, were
   made tenants in common with defendants, held, to have been
   made under circumstances in which, if there is doubt as to
   whether there was duress at all, it was not caused by de-
   fendants, hence duress was not available as a basis for at-
   tacking the settlement.

Appeal from Wayne; Campbell (Howard M.) J.,
presiding. Submitted October 4, 1950. (Docket No.
17, Calendar No. 44,875.) Decided January 8, 1951.

REFERENCES FOR POINTS IN HEADNOTES
[2] 16 Am Jur, Deeds, § 123; 54 Am Jur, Trusts, §§ 47, 231–235.
[2] Grantee's oral promise to grantor as giving rise to trust.  35
    ALR 280; 45 ALR 851; 80 ALR 195; 129 ALR 689; 159 ALR
    997.
[3] 11 Am Jur, Compromise and Settlement, § 4.
[4] 17 Am Jur, Duress and Undue Influence, §§ 18, 20.

Bill by Casimer P. Musial and wife against Andrew Yatzik and wife to have plaintiffs decreed to be owners of certain real estate. Decree for plaintiffs. Defendants appeal. Reversed.

*Victor H. Wehmeier,* for plaintiffs.

*J. Gilbert Quail,* for defendants.

BUTZEL, J. During the early part of 1943, Casimir P. Musial, about to be drafted into the army, was allowed 90 days to straighten out his affairs. He sold his grocery and decided to use the proceeds to buy a house so that his wife Helen would have a place to live while he was away. The plan was discussed with Andrew and Elizabeth Yatzik, Helen Musial's parents, and it was agreed that they would live with Helen while Casimir was in the army. The 2 families found a satisfactory 2-story house, and they jointly signed the offer to purchase it. However, in their negotiations with the vendor, trouble developed because Casimir was not considered a good risk as he was subject to army duty. It was concluded that the contract for the purchase of the house should run to Andrew and Elizabeth Yatzik. The Musials claim that they did not intend to give the Yatziks actual title to any part of the premises and that having the contract run to the Yatziks was solely a matter of convenience. The Musials furnished the entire first payment of $2,000 on the contract. According to Musial the future payments were to be made by all the parties. It was a friendly transaction between relatives. While Musial was in the army the Yatziks acquired title and gave back a purchase-money mortgage to the original vendor.

Helen and her parents lived on the first floor of the house. Andrew Yatzik collected the rent from the tenants of the upper floor and applied it on the mort-

gage payments. Both the Yatziks and the Musials bought furniture for the house, contributed to its up-keep, and made payments on the contract and mort-gage. The Yatziks contributed more, for Casimir was in the army. Mr. Yatzik did many things that indicate that he considered himself more than a tenant. He made permanent additions and improve-ments on the premises in his spare time, being a car-penter by trade, painted the house and went to un-usual lengths to improve the lawn.

There was no dispute between the parties until shortly after Casimir returned from the army in De-cember of 1945. In March of 1946, Casimir had an opportunity to buy a super market, but had difficulty in borrowing the $4,000 necessary to complete the transaction for he had no security. He asked his in-laws to change the record title, but they refused. Finally Casimir was able to borrow the money with-out security, and went into the grocery business. After this incident there was constant quarreling between the 2 families, and both parties began to keep a record of expenditures.

In the latter part of 1947 Casimir's super market was threatened with bankruptcy, and Casimir could not raise the additional $5,000 necessary to save the business without security. He explained the situa-tion to his father-in-law, and begged him to transfer title. After bitter argument Andrew Yatzik agreed to sign a quitclaim deed to an undivided one-half interest in the premises. The deed had been pre-pared by Casimir's attorney. The transfer was made on December 10, 1947, and the deed was re-corded.

On May 13, 1949, the Musials began an action in chancery against the Yatziks to obtain title to the entire premises on a theory of resulting trust. They claimed that since they had paid the consideration for the property, the defendants held title only for

the plaintiff's use and benefit. The trial court found that the Yatziks had acted in bad faith from the beginning, and decreed that they convey their entire interest in the premises to the Musials. From this decree, the defendants have appealed.

It is unfortunate that the attorneys overlooked the provisions of the Revised Statutes of 1846, ch 63, § 7 (CL 1948, § 555.7 [Stat Ann § 26.57]), until we asked for briefs on the effect of the statute. Section 7 of the statute reads:

"When a grant for a valuable consideration shall be made to 1 person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee of such conveyance, subject only to the provisions of the next section." (These provisions do not herein apply.)

The testimony is conflicting as to whether there was an oral promise to reconvey, but this is immaterial. An oral promise to reconvey creates an unenforceable parol trust only. *McIntyre* v. *McIntyre,* 205 Mich 496; *Stephenson* v. *Golden,* 279 Mich 710, 733. There is no indication of fraud in the record.

We have construed this section of the statute literally during the course of years, and have refused to enforce common-law resulting trusts. The plaintiff argues that our interpretation of the statute has been too harsh and urges us to adopt the more liberal construction given to the statute by the New York court of appeals. The New York court might find a constructive trust on the present facts. *Foreman* v. *Foreman,* 251 NY 237 (167 NE 428), and cases cited therein. Were this the only basis for our decision we might re-examine the question with more thoroughness, but under either interpretation of the statute the plaintiff must fail. In 1947, both parties

claimed the property, and a bona fide dispute arose. The plaintiffs were represented by counsel. Rather than litigate their claims, the parties entered into a compromise agreement. The law looks with favor on fairly made settlements, and they are conclusive on the rights of the parties to them. *Lehaney* v. *New York Life Ins. Co.,* 307 Mich 125; *In re Peck's Estate,* 323 Mich 11.

The plaintiff contends that the settlement agreement was made under duress; that his acute need for money drove him to enter into the settlement. He testified that he did not consider the settlement binding at the time it was consummated, and that it was only an expedient by which he could save his business. It is not claimed that the Yatziks caused the business difficulties. There is doubt as to whether there was duress at all in this case, but even assuming duress, it was not caused by the Yatziks and cannot be raised as a basis for attacking the settlement contract. See *Hackley* v. *Headley,* 45 Mich 569.

In view of our findings, the other questions raised by the appellants on appeal need not be discussed.

The parties became tenants in common by the settlement. The decree of the trial court is reversed, and one may be entered in this Court dismissing the bill of complaint. Appellants will recover costs.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.